The next case this morning is 522-0762, People v. Cobb. Arguing for the appellant is Sarah Curry. Arguing for the appellee is 7-11 licensed law student Henry Jenkins, with supervising attorney Michael Lennox. Each side will have 10 minutes for their argument. The appellant will also have 5 minutes for rebuttal. Please note, only the clerk of the court is permitted to record these proceedings today. Good morning, counselors. We have read your briefs. We're looking forward to your arguments. Ms. Curry, are you ready to proceed? All right, you may do so. Thank you. Thank you. Good morning, your honors. Sarah Curry from the State Appellate Defender. I represent Stephen Cobb. I've raised two issues on appeal and I intend to address both of them in turn. Stephen Cobb was tried on two charges of aggravated criminal sexual abuse and one charge of predatory criminal sexual assault. The jury acquitted Cobb of two charges, finding him guilty of aggravated criminal sexual abuse for patting jails but with an open palm. However, the state did not prove him guilty beyond a reasonable doubt. Where a defendant is convicted of aggravated criminal sexual abuse and denies the charges, as is the case here, the conviction will be upheld where the complainant's testimony is clear and convincing or where it is substantially corroborated by other evidence. Here, jail's testimony was neither clear and convincing nor was her testimony substantially corroborated. JL and her mother, Mary, were not credible and had a motive to fabricate these allegations. JL allegedly reported the abuse to her mother in the fall of 2016 and again in the summer of 2017. Yet the first documented report of abuse did not come until December 2017, just a week or so after Cobb refused to let Mary and her new wife, Kaylee, take their children and move to Minnesota. In the late summer or early fall of 2017, Mary had taken JL to SACUS inexplicably not because of the alleged abuse but because of something having to do with a Snapchat photo. Neither JL nor Mary reported the abuse of this meeting. On December 8th, 2017, Mary took JL to see Eliza Smith at Sarah Bush because she was having mental health issues and needed her medications adjusted. JL told Smith that she was depressed because her biological dad was an alcoholic and girls at school were being mean to her. Now, can I stop you for just a second, Ms. Kirk? Yeah. We've read the brief, we're familiar with the facts of the case. Can you tell me, I mean, one part of your case that bothers me the most is that, you know, allegedly JL made these disclosures to her mother about what was going on with Mr. Cobb and after those, at least the initial disclosure, possibly the second time she had brought it up with her mother, mom leaves her and all three siblings with Mr. Cobb to go off with her new girlfriend or wife or whoever she was at the time for several weeks. Correct. How is that not, you know, it's not a very reasonable thing to do for a mother to, if she believes those allegations, to leave the victim with the victimizer, if you will, for that period of time. Can you explain how you, what's your argument with regard to that scenario? Well, I think that her leaving JL after that time period means that either the allegations were never made or if they were made, Mary did not believe them and did not feel that then JL would have been in a dangerous, dangerous situation to leave her there all alone. So that. So is it your argument, is it your belief or your argument that the disclosures were not made to her mother prior to her leaving? Either they were not made or. I'm not asking either or, I'm asking what is the position that you take? That is not 100% clear from the evidence. JL said that the disclosures were made and initially, you know, Cobb refuted those after the initial disclosure. After the second disclosure was made, it's unclear exactly when that disclosure happened, but from the record, it's not entirely clear. I can't say for certain whether the allegations were or were not made, but if they were made, certainly Mary did not believe them. Otherwise, it would have been unfathomable for her to leave her daughter then in the care of this man without any other adult supervision presence there. Okay, so Mary's position is that she was unaware that those, she had never been informed by JL of those allegations prior to her leaving or that she didn't believe them. Mary did say that the first allegation did happen and at that time. She was aware of them when she left. She may or may not have believed them at that time. Certainly the first one, she did not seem to believe it to be accurate and Cobb denied it at that time too. Okay. Moving on, there were other several other opportunities that JL and Mary both had to document or inform authorities about this alleged abuse and they never took opportunity to do that at all until the issue of the custody really came to a head. Mary testified that she noticed behavior changes in JL during this time, but JL had suffered from mental health issues long before these allegations of abuse arose. She had been on medication since she was eight years old and had received months-long counseling long before in 2014 the alleged conduct occurred. Moreover, there was no corroboration whatsoever of JL's allegation that Cobb touched her butt. JL testified that this happened over the course of three years that Cobb grabbed and touched her butt every day everywhere. However, no one testified at trial that they ever saw Cobb touch, slap, or grab JL's butt despite the number of people that were in and out of the three homes that they lived over this period. Cobb's mother lived with them for several months. JL's father stayed with them several times for months-long periods, including up until June 2017. Kaylee, Mary's current wife, moved in in October 2016 and stayed through June 2017. Kaylee even quit her job and was staying home with the children during part of this period. Yet nobody, after all of these people in and out of these houses, nobody testified that they ever saw Cobb touch or slap her butt despite JL's testimony that it happened every day. Moreover, the state didn't prove that Cobb touched JL's butt for the purpose of sexual gratification, which is a required element of the offense. JL testified that Cobb slapped and grabbed her butt, but when asked to describe exactly what she meant, she said that it was, quote, just like a pat on the butt, open palm. While JL described this conduct as sexual, her only basis for that was that she didn't, it wasn't something that she normally saw other parents doing with their children. JL did not testify that Cobb made any sexual comments when he patted her butt. She did not testify that he positioned his body in any way that was sexual in nature when he did it. She didn't testify that his hand lingered on her butt or that the pat lasted any more than a second. She didn't testify that Cobb had an erection or was aroused in any way when he patted her butt. Under these circumstances, the state did not prove sexual gratification beyond a reasonable doubt. And because the state did not prove Cobb guilty, this court should reverse his conviction. If there are no questions on that, I'll move on to the sentencing issue. Here, the trial court, despite finding that Cobb was particularly likely to comply with a term of probation based on his performance on pretrial release and the conclusions of the prison. The sentencing range for aggravated criminal sexual abuse is three to seven years or up to four years probation. Cobb had one prior conviction for a misdemeanor battery. He, when he was 17 years old, he'd been living a law abiding life for 24 years. He was on pretrial release from April, 2018 until the date of sentencing, November 23, 2022 with no problems. That's four full years on a pretrial release with no issues. In Illinois, there's a statutory presumption in favor of probation and a court should impose probation unless imprisonment is necessary for the protection of the public or probation would deprecate the seriousness of the offense. Here, the court found that probation would deprecate the seriousness of the offense, but Cobb was convicted of patting jails, but having been acquitted of the more serious charges, probation would not have deprecated the seriousness of the offense under these circumstances. And just as importantly, a court must consider whether the defendant would particularly likely comply with the terms of probation. The court specifically found that he would likely comply based on the four years he was out on pretrial release with no issues whatsoever. And the experts that found that he would likely do well with sexual abuse counseling outside of prison. Cobb should have been sentenced to probation or at most a minimum term of three years imprisonment. This court should reduce Cobb sentence to either a period of probation or the minimum three years. Thank you. Thank you. Other questions, Justice Barberos? No. Justice Bowie? No, thank you. All right. Thank you. Ms. Curry, we provided opportunity for rebuttal in a moment. Thank you. Mr. Jenkins, you ready to proceed? Yes, Your Honor. You may do so. Good morning, Justice. If I may please the court, my name is Henry Jenkins. I'm here under the Illinois Supreme Court Rule 711 to represent the state. This court should affirm the defendant's aggravated criminal sexual assault conviction and the five-year sentence. The defendant received a fair trial where the jury thoroughly evaluated all the evidence and the credibility of the witnesses, reaching a reasonable conclusion. The jury's findings were the appellate court's role here is not to reweigh the evidence or reevaluate the witness's credibility. The defendant's claim for ineffective assistance of counsel were unfounded and the trial court did not commit any error, let alone plain error, in the sentencing. Now, first on the first aspect, the defendant had his day in court. He presented his case and the issue is now that he does not in weighing the evidence and the credibility of the witnesses. The defendant is essentially asking to retry the facts, plainly that they came to the wrong conclusion, and this is not valid grounds for reversal. The reviewing court's job is to evaluate any proceedings and determine, in the light most favorable to the prosecution, whether any reasonable trial fact could have found the essential elements of the charge satisfied beyond a reasonable doubt. In this trial, the jury heard all the testimony. They observed the best position to evaluate the credibility and weigh the evidence as they did. So let me ask you a question. Let me ask you a question. With regard to the jury's weighing the evidence and the credibility of the witnesses, they acquitted him on all but one charge. Is that correct? That's correct, your honor. And what was the charge? What was the specific allegation that they convicted him on? It was for the grabbing or patting of the butt of the minor victim. Okay. I don't mean to belittle that particular charge, but of all the charges, that's the least behavior to her mother at least once, if we can agree that she was at least informed of that one time. And then she left that child, the victim, if you will, along with the victim's siblings in the care of the offender for a fairly long period of time. And did not, so the assumption is she didn't believe the victim at the time that it was initially disclosed to her. Is that correct? That is correct. The, when did she decide she believed the victim? This would have been around the time of the divorce in late June or early July of 2017 after she'd left the house for two weeks. Was it, was it after the marriage or before the marriage, her, her subsequent marriage? It was before she got married to her current partner. Okay. And was it before or after her and her partner at the time requested custody of all the kids to move to Minnesota? For the record, I do believe that it was, the second disclosure was before that request for the custody. The second disclosure, but when did she? To her mother. Right. But when did her mother change her position that, hey, maybe this did take place and took it seriously? Was it before or after the request she made of Mr. Cobb to take all four children to Minnesota? I believe that it was before. She, she made some efforts towards getting her daughter counseled or having Mr. Cobb arrested or whatever it may be before she was told no by Mr. Cobb. From the record, the mother had believed the victim, but left it to her for when to report. She had taken her to different doctors or eventually took her to the where he disclosed it to them later on. But in the meantime, she had testified that she was told by her attorney not to bring that up in the petition for custody. She was advised to leave it out of there to deal with it at a separate instance. Okay. So, so the reason she took them, she took the child to the SAA, whatever that request for nude pictures. Is that correct? That's what it said. So it wasn't specifically because of the allegations against Mr. Cobb. Correct. So again, I asked, did she decide that Mr. The allegations against Mr. Cobb warranted investigation or belief before or after Mr. Cobb said no to her request to take all four of her children to Minnesota? And I believe that from that timeline, he believed her daughter beforehand, but had stated in her testimony that it was not her place to go and report it for her daughter, that it was up to JL to decide when and where to report the abuse to. All right. Thank you. Um, your honor, and then to continue forward into the intent, um, the defendant's intent can be inferred, can be inferred from a myriad of things. One being his age, addition to that being the conduct and the circumstances, um, or the circumstantial evidence around. Now, one factor is that the age of the adult, you can find the intent simply from that, but there is no bright line test in Illinois to decide where to infer the intent for sexual gratification from. In this case, the defendant was 33 years old, much older than a 10 year old JL. He held a position of power and authority over her as her stepfather. He had told her what he was doing was okay because she wasn't his real daughter. He only touched her in times and places where no one else was around to see it. He bribed her with time to play outside or the taking away of chores. And he threatened her by saying that she couldn't tell anyone or she couldn't tell her mother because what he was doing, or sorry, couldn't tell anyone what he was doing because her sisters would then grow up without a father. Was that, was that, were those promises or threats to JL made by Mr. Cobb, were those specific to the patting or the grabbing of her butt, or was that more related to the other activities that he was acquitted on? From the way it appeared in the record, it seems like it happened throughout the course of all of it. From the beginning where he had started to force her to kiss him, to the butt touching, to the coerced fellatio in Shelby County, it looked like it was pervasive throughout the entire duration of this. So it wouldn't have been just attached to the butt touching or just attached to the other allegations, but it'd be more comprehensive. Okay. Is it fair to say, is it fair to say the touching of the buttocks is not dependent on the victim's age, but the other allegations were dependent on her being under 13? Correct. The other allegations, it was the touching of her sexual organ, either A, before or B, after she had turned 13. And the testimony of trial did not conclusively show whether she was under 13 or over 13. She testified that she did not know how old she was. Would that explain the jury verdicts of finding guilty on the butt touching because age was not dependent, but not guilty on the other two because they couldn't tell for sure when it happened and whether she was in fact under 13? Yes, Your Honor. The jury could have absolutely decided that she was entirely credible and found that everything that she said happened did happen, but they still could not have convicted on the charges they acquitted of because she was not clear on what her age was at the time. And those charges were dependent on how old she was, specifically in the elements. You can continue. And to go to show that the jury did deliberate on this, they spent seven hours before they came back with their verdict, had multiple questions to show that they did not just clearly disregard what she had said, but they elaborated on it. They went through and made sure that they were making the right decision. And I see that my time is coming up to a close, so I wanted to conclude by requesting that this court affirm both the conviction and the sentence imposed by the trial court as the jury's findings were reasonable based on the substantial evidence and that the defendant's claims in this appeal lack the merit to them. Thank you. Questions? Other questions? Justice Barberos? No. Justice Bowie? No. All right. Thank you. Appreciate your arguments, Mr. Jenkins. Ms. Curry, rebuttal. Yes, thank you. Just to clarify the timeline here. Yes, Mary testified that after the second, JL reported the allegations to her the second time. Mary did testify that she thought she would leave it up to JL to report it to authorities. However, after that... How old was JL at that time? I'm sorry. How old was JL at that time? She would have been 13. She took her to SACIS about a Snapchat photo. She didn't let herself report the Snapchat photo incident. She took her to Sarah Bush because she was having mental health issues and Mary was worried she was going to hurt herself, yet they didn't report this allegation there. I mean, her mom was... Mary was there to report things, but not the biggest thing that was allegedly going on until a week or two after Cobb told her, no, you may not take these children and move to Minnesota. And then... You dispute what Mr. Jenkins' answer was to my question with regard to when she allegedly started to believe or take action. Yes, that is the first documented report was after the request to move to Minnesota was denied. And while Mary may have testified that she was leaving it up to JL, that testimony is incredible because she's taking her to all of these appointments for all of these other things that are going on with her. And to leave the biggest thing out just... It doesn't make sense and should not be believed. But let me ask you this, counsel. I mean, the defense counsel at trial... I mean, it's fair to say, made extensive cross-examination regarding all this testimony and to the inconsistencies and everything that you're arguing. Is that a fair assessment? The defense did put up a good fight, yes. So then it becomes, as I believe one of you said, then it becomes who is to assess the testimony and make the decision. And that's a trier of fact. And that's what the trier of fact did, correct? Yes, but the court is not bound by the trier of fact. I understand. But I mean, we're supposed to give great deference to that trier of fact. Is that not the standard? You are supposed to give great deference. But if that testimony is so incredible and uncorroborated, then this court cannot just simply abide by what the finder of fact determined. And in this case, Mary and Jael were incredible. And her testimony was uncorroborated. Jael's other testimony was that she was cutting herself from about 10 years old onward. But that was not corroborated by anyone else's testimony, was it? I mean, not even Mary's testimony. Not even Mary could corroborate that. And all of the people, all of the doctors, again, all these people that were through the house, nobody ever saw any evidence of this cutting. And again, Jael suffered from mental health issues. Nobody disputes that. But those mental health issues were apparent before this alleged abuse began. And that is a factor to consider when assessing her credibility. And again, to answer one of your other questions, there was no bribing or threatening associated with the butt slapping at all. Jael testified specifically about when these threats and bribes were made. And it was in regard to the other allegations of which he was acquitted. If there are no other questions. You said the mental health issues indicated prior to these alleged sexual issues. When does the record show that she began having mental health issues? At what age? There was testimony that she began. She started taking medication for her mental health issues when she was eight years old. And that the summer of 2014, she was in, sounded like quite intense therapy. And these allegations, her testimony about when these allegations began was not until later in the fall of 2014. In fact, she was in when she was 14. Wasn't she admitted as an inpatient for mental health reasons? That was actually after Cobb's arrest, that she was an inpatient for a brief period before her mother took her out against medical advice to go up to Minnesota for what she called a family emergency. Right. Okay. Well, if there's nothing else, we ask that you reverse Mr. Cobb's conviction outright. Thank you. Other questions, Justice Bowie? I don't have any questions, but before we go, I think counsel, both sides did a fine job arguing, but I will give some kudos to young Mr. Jenkins for withstanding some pretty hot questioning from the appellate court. He did a wonderful job and I wish you the best. I'm sure I speak for the court. I wish you the best in your future, young man. Thank you very much. I appreciate it. I was going to add, I was going to say the same thing, Justice Bowie said that without, without, you know, tipping my hand as to which way I'm leaning, I thought you did a nice job of answering my questions and not getting flustered by them. So, so good job on that. Thank you. Gary, you did a nice job too. So, I thought both, both attorneys did a good job and it's a confusing record when you have cases like this and witnesses giving different stories and different witnesses corroborating or contradicting each other. It's a hard record to keep straight in your mind. So, I thought both, both attorneys did a good job keeping the record somewhat clear. I thought you did a nice job too, keeping a straight face the entire time and not, not interjecting. Thank you, Your Honor. It was so hard doing that. We appreciate your arguments today. You'll consider your arguments together with the briefs that were already filed. As Justice Barbera mentioned, we've read the briefs. We will take the case under advisement and issue a decision in due course.